IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 14-28 |
| | ) | |
| MELVIN BRATCHER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CONTI, Chief District Judge

On February 27, 2014, defendant Melvin Bratcher ("defendant") filed a motion for release on bail with conditions. (ECF No. 23.) After a de novo review of the proceedings before the magistrate judge, as well as a review of the pleadings in this case, the pretrial services report prepared by the pretrial services officer, the arguments of counsel, and the hearing held on March 20, 2014, this court denied defendant's motion and ordered that defendant be detained without bond pending trial. This memorandum opinion sets forth the reasons for the court's decision, which were detailed on the record.

**I.    Background**

    **A.    Procedural History**

On February 11, 2014, a grand jury returned a three-count indictment at criminal action number 14-28 charging defendant with possession with intent to distribute twenty-eight grams or more or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Scheduled II controlled substance (count one), possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of

heroin, a Scheduled I controlled substance (count two), and possession of a firearm in furtherance of a drug trafficking crime (count three). (ECF Nos. 13, 14.) The offense at count one of the indictment carries a statutory minimum term of imprisonment of not less than five years and a statutory maximum term of imprisonment of forty years. (ECF No. 14 at 5.) The offense at count two of the indictment carries a statutory maximum term of imprisonment of twenty years. (Id.) The offense at count three of the indictment carries a statutory minimum term of imprisonment of not less than five years, which shall concurrently run to any sentence imposed at counts one or two of the indictment. (Id. at 6.)

A detention hearing was held on January 24, 2014. At the hearing, the magistrate judge determined by clear and convincing evidence that defendant posed a risk of flight and danger to the community and entered an order of detention for defendant pending trial. (ECF No. 11.) After defendant moved to revoke the order of detention, this court held a de novo hearing on March 20, 2014. After reviewing the transcript of the January 23, 2014 detention hearing, and taking into consideration the arguments presented by the parties at the March 20, 2014 hearing, the court denied defendant's request for bond.

**B.     Factual Background**

At the detention hearing before the magistrate judge on January 24, 2014, the government presented the testimony of Mark Dana ("Dana"), a special agent with the Federal Bureau of Investigation (the "FBI"). (H.T. 1/24/14 (ECF No. 25) at 5.) Defendant presented the testimony of Clarissa Helen Bratcher ("defendant's great-aunt"), defendant's great-aunt. (Id. at 21.) Based upon these sources and the pretrial services report, the following factual background was developed.

The FBI and the Drug Enforcement Agency (the "DEA") conducted a long-term investigation involving wiretaps and resulting in a series of arrests, which led them to investigate and subsequently arrest defendant. (H.T. 1/24/14 (ECF No. 25) at 5.) A person arrested in connection with the long-term investigation told the FBI he or she could contact defendant and obtain a gun or drugs from him. (Id. at 12.) By reason of defendant's connection to the long-term investigation, the FBI obtained a search warrant for 7309 Schley Street in Penn Hills, Pennsylvania ("defendant's residence"), which was known to be defendant's residence. (Id.) The search warrant for defendant's residence was signed by a magistrate judge on January 15, 2014, and executed on January 21, 2014. (Id.)

Prior to executing the warrant on January 21, 2014, the FBI conducted surveillance on defendant's residence. (H.T. 1/24/14 (ECF No. 25) at 5-6.) The FBI observed defendant driving away from his residence in a Chevrolet Tahoe. (Id. at 6.) Defendant was stopped by law enforcement while driving the Chevrolet Tahoe a short distance from his residence. (Id.) Law enforcement detained defendant, searched him, and recovered approximately $2,700 from his person. (Id.)

Soon after defendant was stopped in the Chevrolet Tahoe, the FBI executed the search warrant on his residence. (H.T. 1/24/14 (ECF No. 25) at 6.) The FBI found a woman and small child inside the residence. (Id.) The FBI recovered four firearms in defendant's residence, none of which were licensed to defendant, and all of which were manufactured outside Pennsylvania. (Id.) Two of the firearms were found in a bedroom; one firearm was found on the floor in the dining room; and one firearm was found inside a pocket of a coat that was hanging inside the residence. (Id.)

The FBI also found during the execution of the search warrant:

- Indicia of residence for defendant in the home;

- Twenty bricks of heroin, containing fifty individual doses of heroin each, which were found inside and around a dog food bag on the kitchen floor;

- Fifty-seven grams of crack cocaine recovered from the pocket of a men's coat hanging in the stairwell of the residence;

- Digital scales; and

- Empty stamp bags, which are consistent with heroin distribution.

(H.T. 1/24/14 (ECF No. 25) at 6-7.) FBI agents spoke with the woman and defendant about the items recovered from the residence. (H.T. 1/24/14 (ECF No. 25) at 7.) The woman and defendant indicated that the items did not belong to the woman. (Id.)

After the search of defendant's residence, FBI agents obtained a search warrant for all vehicles associated with and registered to defendant that were at his residence, i.e., a 2003 Chevrolet Tahoe, a 2003 Mercedes Benz, and a 2002 Cadillac Escalade. (H.T. 1/24/14 (ECF No. 25) at 7; Pretrial Services Report at 2.) FBI agents found two hidden compartments inside the Chevrolet Tahoe. (Id.) FBI agents recovered a fifth firearm from one of the hidden compartments inside the Chevrolet Tahoe and eleven additional grams of crack cocaine from the second hidden compartment inside the Chevrolet Tahoe. (Id.)

Dana performed surveillance as part of the long-term investigation that lead to defendant's arrest. (H.T. 1/24/14 (ECF No. 25) at 12.) Dana did not personally conduct the stop on the Chevrolet Tahoe or perform the search of defendant, his residence, or vehicles. (Id. at 9.) Dana is a member of the FBI group that conducted those searches and works alongside of the agents who were present at the execution of the search warrant for defendant's residence. (Id. at 10-11.) Prior to testifying at the hearing on January 23, 2014, Dana spoke with his co-agents and read reports and affidavits submitted in support of defendant's arrest. (Id. at 11.)

Dana received information from the Pittsburgh Police Department's Intelligence Unit (the "Intelligence Unit") that defendant is believed to be a member of the Sin City Disciples Motorcycle Club (the "Sin City Disciples"), which is believed by the Intelligence Unit to be an outlaw motorcycle club that engages in illegal activities. (H.T. 1/24/14 (ECF No. 25) at 19.) Dana was informed by the Intelligence Unit that defendant has been photographed wearing paraphernalia of the organization, and the Intelligence Unit received other information indicating defendant is a member of the Sin City Disciples. (Id.) Dana did not receive any documentation from the Intelligence Unit with respect to defendant's involvement with the Sin City Disciples, or any information indicating defendant participated in illegal activity with the club. (Id. at 20-21.)

### C. Defendant's Personal Background[1]

According to the pretrial services report prepared by the United States Probation and Pretrial Services Office, "defendant reported he is a lifelong resident of the greater Pittsburgh, Pennsylvania area." (Pretrial Services Report at 2.) Defendant does not possess a valid United States passport and has never traveled outside the United States. (Id.) Defendant was raised by his grandparents who are deceased. (H.T. 1/24/14 (ECF No. 25) at 27.) Defendant's mother lives in Washington, Pennsylvania, and his father lives in Indiana. (Id. at 1.) Defendant maintains weekly contact with his parents. (Id.) Defendant has four children, three of whom live in Pittsburgh, Pennsylvania. (Id.) Defendant's other child lives in New York. (Id.) Defendant maintains regular contact with his children. (Id.)

The Pretrial Services Office reports that defendant does not have his high school diploma and he did not pass the general education development ("GED") tests. (Id.) Defendant has been

---

[1] Defendant's personal background information was obtained from testimony given by his great-aunt at the January 24, 2014 hearing and the pretrial services report dated January 23, 2014.

5

unemployed for eight months, but according to defendant, he worked for Mike's Auto Repair on Brushton Avenue in Homewood, Pennsylvania, for "years." (Id. at 2.) Defendant does not have a monthly income and currently receives financial support from his family. (Pretrial Services Report at 2.) Defendant reported that he owned a Mercedes Benz, a Chevrolet Tahoe, and a Cadillac Escalade, which were seized in connection with the instant criminal action. (Pretrial Services Report at 2.) Defendant did not report any additional assets or liabilities. (Id.)

Defendant's great-aunt, who works with senior citizens for the Urban League, is willing to serve as a third-party custodian for defendant and permit him to live with her while he is released on bond. (Pretrial Services Report at 2; H.T. 1/24/14 (ECF No. 25) at 23.) Defendant's great-aunt owns her home, and defendant's uncle, Larry Bratcher, lives in the home with defendant's great-aunt. (Id.) There is a landline telephone service available in defendant's great-aunt's home to accommodate home detention and electronic monitoring if those conditions are imposed upon defendant. (Id.) Defendant's great-aunt owns a semi-automatic .380 pistol, but she would relocate the firearm if necessary to serve as the third-party custodian for defendant. (Id.) The United States Probation and Pretrial Services Office found defendant's great-aunt to be an acceptable candidate to serve as a third-party custodian for defendant. (Id.)

Defendant's arrest history began when he was eleven years old. (Pretrial Services Report at 3.) As a minor, he was adjudicated delinquent for the following offenses: criminal trespass; simple assault; and fleeing to elude police. (Id. at 3-5.) As an adult, defendant pleaded guilty nine times to disorderly conduct. (Id. at 5-11.) On April 10, 2008, defendant received a term of probation of six months without a verdict on charges for tampering with or fabricating physical evidence and possession of a controlled substance. (Id. at 6.) According to the Pretrial Services Office, defendant was arrested on those charges while released on bond for offenses charged at

criminal action number 1319-2006. (Id. at 7.) On July 6, 2009, defendant pleaded guilty to tampering with or fabricating physical evidence, possession of a controlled substance, possession of marijuana, and driving without a license. (Id. at 8.) According to the Pretrial Services Office, defendant was arrested on those charges while released on bond for the offenses charged at criminal action number 1319-2006 and while serving probation without a verdict on the charges at criminal action number 13217-2007. (Id. at 8.) On December 14, 2010, defendant pleaded guilty to possession of less than one ounce of marijuana. (Id. at 9.) According to the Pretrial Services Office, defendant was arrested on that charge while released on bond for the offenses charged at criminal action number 1319-2006 and serving a term of probation for the offense at criminal action number 13210-2008. (Id. at 7.) On July 11, 2012, defendant pleaded guilty to driving under the influence of alcohol and careless driving. (Id. at 11.)

Defendant currently has thirty-eight active warrants, which include: twenty-five traffic offense bench warrants, three traffic offense arrest warrants, seven non-traffic offense bench warrants, and three non-traffic offense arrest warrants. (Id.)

**II.     Standard of Review**

The court's standard of review of a magistrate judge's denial of pretrial detention is <u>de novo</u>. <u>United States v. Delker</u>, 757 F.2d 1390, 1394 (3d Cir.1985).

**III.    Discussion**

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the

7

appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

### A. Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . *(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) [or] (B) an offense under section 924(c), 956(a), or 2332b of this title[.]*

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed offenses that fall within the category of offenses listed in § 3142(e)(3)(A) because a grand jury returned an indictment charging defendant with: possessing with intent to distribute twenty-eight grams or more or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Scheduled II controlled substance (count one), a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and possessing with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a Scheduled I controlled substance (count two), a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The maximum statutory penalty

for the offense at count one is forty years. The maximum statutory penalty for the offense at count two is twenty years.

There is also probable cause to believe defendant committed an offense that falls within the category of offenses listed in § 3142(e)(3)(B) because a grand jury returned an indictment charging defendant with possessing a firearm in furtherance of a drug trafficking crime (count three), which is a violation of 18 U.S.C. § 924(c)(1)(A)(i).

Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Defendant at the hearings before the magistrate judge and this court did not contest the application of the rebuttable presumption to this case.

### B. The § 3142(g) factors

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g) which the court must consider in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

>     criminal history, and record concerning appearance at court proceedings; and
>
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### C. Danger to the Community

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986). The combination of drugs and guns constitutes a very serious danger to the community. United States v. Pitts, Crim. No. 09-204, 2010 WL 3303800, at *4-5 (W.D. Pa. Aug.

19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing United States v. Levy, Crim. No. 08-393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008); United Sates v. Miller, Crim. No. 10-4058, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010); United States v. Francis, Crim. No. 01-60, 2001 WL 899635, at *5 (S.D. Ind. June 8, 2001)).

1. **Evidence Presented by Defendant to Rebut the Presumption**

Defendant in this case did not present evidence with respect to the first, second, or third factor listed in § 3142; instead, defendant argued that the government's evidence against him was weak and relied upon his history and characteristics to rebut the presumption. Defendant offered the following evidence, which is set forth in more detail supra, to rebut the presumption:

- Defendant has no significant prior adult record;

- Defendant is a lifelong resident of the Pittsburgh, Pennsylvania area;

- Defendant has four children; and

- Defendant's great-aunt is willing and able to act as a third-party custodian for defendant.

Even assuming the foregoing evidence rebutted the presumption in this case, the government persuaded the court with clear and convincing evidence of the nature of the offense charged, the weight of the evidence against defendant, defendant's personal characteristics, and the nature and seriousness of the danger to the community posed by defendant's release, that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were to be released. 18 U.S.C. § 3142(f); Perry, 788 F.2d at 115 ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

### 2. Clear and Convincing Evidence Presented by the Government

With respect to the nature and circumstances of the offense charged, defendant was indicted for three very serious offenses—possessing with intent to distribute twenty-eight grams or more or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Scheduled II controlled substance (count one); possessing with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a Scheduled I controlled substance (count two); and possessing a firearm in furtherance of a drug trafficking crime (count three). The maximum statutory penalty for the offense at count one is forty years. The maximum statutory penalty for the offense at count two is twenty years. The mandatory five-year minimum sentence to be imposed at count three, furthermore, must be imposed consecutively to any term of imprisonment imposed at counts one and two. The indictment in this case supports the finding of probable cause with respect to these offenses and is evidence of the serious nature of the offenses, which weighs against a finding that defendant should be released pending trial.

Second, in considering the weight of the evidence against defendant, the court examined the evidence presented at the hearings, including the evidence outlined above in the background section. Based upon that review, the court concludes that the weight of the evidence against defendant as presented by the government is strong. FBI agents found the following evidence in defendant's residence:

- Indicia of residence for defendant in the home;
- Four firearms;
- Twenty bricks of heroin, containing fifty individual doses of heroin each, which were found inside and around a dog food bag on the kitchen floor;

- Fifty-seven grams of crack cocaine recovered from the pocket of a men's coat hanging in the stairwell of the residence;

- Digital scales; and

- Empty stamp bags, which are consistent with heroin distribution.

(H.T. 1/24/14 (ECF No. 25) at 6-7.) When FBI agents questioned defendant and the woman who was in the residence when the search warrant was executed about who owned the items recovered from the home, defendant and the woman told the agents the items did not belong to the woman. Defendant was observed driving a Chevrolet Tahoe away from the residence. When the FBI agents searched the vehicle pursuant to a search warrant, they learned the vehicle contained two trap compartments; one trap compartment contained another firearm and the other contained eleven additional grams of crack cocaine.

Along with the evidence of defendant's history and characteristics proffered by defendant, the evidence showed that defendant has been unemployed for the past eight months, does not have a monthly income, has lived between various girlfriends' homes and his great-aunt's home for the past two years, and is financially supported by his family members.

Defendant has never been convicted of a felony offense or done significant jail time. He has, however, been involved in the criminal justice system since the age of eleven. There is evidence that while on bond or probation for prior offenses, defendant committed other criminal offenses, and there are outstanding warrants for his arrest. This evidence weighs in favor of defendant's detention pending trial.

Finally, the court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, the court must *predict* whether defendant will engage in drug trafficking if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely

future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." Id. at 114. The court, however, can only look to the record before it, which reflects that in the past when defendant was released, he continued to engage in criminal activity. Furthermore, defendant was unemployed for eight months and has no monthly income. Under those circumstances, even if defendant had rebutted the § 3142(e) presumption, this court finds after considering the record as a whole, there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking on release. In light of this evidence, evidence of defendant's involvement with drugs *and* guns, and the presumption, which retains evidentiary weight, the court is compelled to predict that defendant is likely to traffic in drugs if he is released pending trial, which is a very serious danger that would be posed to the community.

After considering the record as a whole, including consideration of the nature and circumstances of the serious drug offenses charged, the strong weight of the evidence against defendant, the history and characteristics of defendant, the nature and seriousness of danger to the community posed by defendant's release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking while on release pending trial. The government met its burden to show by clear and convincing evidence that defendant poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial. The court will, therefore, enter an order of detention for defendant pending trial.

### D. Risk of Flight

The evidence presented by defendant, i.e., his strong family ties to the community, rebuts any presumption in this case that he is a risk of flight, and the government did not prove by a preponderance of the evidence—even considering the evidentiary weight of the presumption—that defendant is a risk of flight. "The purpose of a Section 3142(e) risk of flight determination...is to secure the appearance of the accused at trial." United States v. Himler, 797 F.2d 156, 161-62 (3d Cir.1986) (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution); United States v. Vortis, 785 F.2d 327 (D.C.Cir.1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia)).

With respect to the nature of the offense, there is probable cause to believe defendant committed three serious offenses in this case, two of which involve drugs and one of which involves guns. The weight of the evidence against defendant is strong because drugs and guns were found in a residence that had indicia of it being defendant's residence, and there were trap compartments found in defendant's Chevrolet Tahoe, which contained a gun and drugs. With respect to defendant's history and characteristics, however, there is evidence that defendant is a lifelong resident of the greater Pittsburgh, Pennsylvania area. With the exception of one of his four children who resides in New York, defendant's family, i.e., his three other children, great-aunt, uncle, mother, and father, all live within the Pittsburgh, Pennsylvania area. Furthermore, defendant attended the relevant court proceedings for the offenses for which he was convicted, and he does not possess a United States passport and has never traveled outside the United States. Although the government only needs to prove defendant is a risk of flight by a

preponderance of the evidence, <u>Himler</u>, 797 F.2d at 161, the court concludes, after considering the record as a whole and the § 3142(g) factors, that the government did not establish that risk.

## IV. <u>Conclusion</u>

Although the government did not meet its burden to show by a preponderance of the evidence that defendant is a risk of flight, it met its burden to show by clear and convincing evidence that defendant poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial. Defendant's motion for release on bail with conditions (ECF No. 23) will, therefore, be DENIED. An appropriate order will be entered.

Dated: April 8, 2014
<u>/s/ JOY FLOWERS CONTI</u>
Joy Flowers Conti
Chief United States District Judge