**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES of AMERICA,** | ) <br> ) <br> ) **Criminal Action No. 14-28** <br> ) |
| v. | ) <br> ) |
| **MELVIN BRATCHER,** | ) <br> ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

I. Introduction

On July 21, 2014, Melvin Bratcher ("Bratcher" or "defendant") filed a motion to suppress physical evidence recovered from 7309 Schley Street, Penn Hills, PA 15235 ("Bratcher's residence" or "defendant's residence"). Bratcher contends that the affidavit used to obtain the search warrant for his residence failed to set forth probable cause as required by the Fourth Amendment to the United States Constitution. (ECF No. 33 ¶ 5.) Bratcher argues that probable cause is lacking because law enforcement agents used uncorroborated information provided to them by a confidential informant ("CS-1") to obtain the search warrant for his residence. (ECF No. 33 ¶ 13.) Without sufficiently corroborating the information provided by CS-1, Bratcher contends that no detached independent magistrate could have found CS-1 reliable. (Id.) Bratcher argues that an exception to the good faith reliance doctrine is applicable in this instance and the evidence recovered from his residence should be subject to the exclusionary rule as fruit of the poisonous tree. (ECF No. 33 ¶ 19.)

At the hearing held on August 28, 2014, the court decided that the evidence presented to the magistrate judge, discussed in more detail below, indicated probable cause

1

because the totality of the circumstances provided a substantial basis from which to infer that a search of defendant's residence would yield evidence of his drug-related activities. The court noted, and discussed, the deferential standard used for reviewing a judicial officer's decision to authorize the search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983); See United States v. Rivera, 347 F. App'x 833, 837 (3d Cir. 2009); United States v. Hodge, 246 F.3d 301, 305-10 (3d Cir. 2001); United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993). In light of this standard, the court denied the defendant's motion to suppress and did not find the exception to the good faith standard applicable.

 A. <u>Procedural History</u>

   On January 21, 2014, a warrant against Bratcher was executed and he was arrested and charged with possession with intent to distribute twenty-eight grams or more of a mixture and substance containing a detectable amount of cocaine base more commonly known as crack cocaine, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(B). (ECF No. 1.) On January 24, 2014, a detention hearing was held, after which a magistrate judge ordered Bratcher detained pending trial. (ECF No. 9.)

   On February 11, 2014, a three-count indictment was handed down by a grand jury charging Bratcher with the previously charged violations, which became Count I, and two additional counts including, Count II, possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a Scheduled I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and, Count III, possessing firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 13 at 1-3.) On February 19, 2014, Bratcher was arraigned before a magistrate judge and pleaded not

guilty, (ECF No. 18, 19 respectively), and moved for an extension of time to file pretrial motions, which was granted. (ECF No. 21, 22 respectively.)

On February 27, 2014, Bratcher appealed the magistrate judge's decision for pretrial detention and moved for release on bail with conditions. (ECF No. 23.) On March 27, 2014, Bratcher filed a motion for extension of time to file pretrial motions. (ECF No. 26.) On April 1, 2014, the court granted Bratcher's motion for an extension of time to file pretrial motions. (ECF No. 27.) On April 8, 2014, the court issued an order denying the motion for release on bail with conditions and an opinion setting forth the reasons for the denial. (ECF No. 29, 28 respectively.) On May 29, 2014, Bratcher again motioned for an extension of time to file pretrial motions, which the court granted on June 2, 2014. (ECF No. 30, 31 respectively.)

On July 21, 2014, defendant filed a motion to suppress physical evidence recovered from his residence, (ECF No. 33.), and on July 23, 2014, defendant moved for a detention hearing. (ECF No. 34.) On July 29, 2014, the government filed a motion to continue the suppression hearing scheduled for August 14, 2014. (ECF No. 35.) The motion to continue the suppression hearing was granted and the suppression hearing was rescheduled to August 28, 2014. (ECF No. 36.) On August 4, 2014, the government filed a response in opposition to Bratcher's motion to suppress, (ECF No. 37), and on August 6, 2014, the government filed a response in opposition to Bratcher's motion for a detention hearing. (ECF No. 38.) On August, 28, 2014, the court heard oral argument from the parties with respect to Bratcher's motion to suppress, (ECF No. 33), and motion for a detention hearing. (ECF No. 34). The rational for the denial of Bratcher's motion to suppress was set forth on the record and is discussed in detail below. The court took Bratcher's motion for a detention hearing under advisement.

II. Background

   A. General

   The Federal Bureau of Investigation ("FBI") and the Drug Enforcement Agency ("DEA"), working with local law enforcement officials, conducted a long-term investigation, which involved the use of wiretaps and resulted in a series of arrests. (H.T. 1/24/14 (ECF No. 25) at 5.) In January 2014, CS-1 was arrested in connection with the long-term investigation. (Id. at 12.) CS-1 told the FBI he or she could contact Bratcher and obtain a firearm or drugs from him. (Id.) By reason of Bratcher's connection to the long-term investigation, which included information provided by CS-1, the FBI obtained a search warrant for Bratcher's residence. (Id.) The search warrant for Bratcher's residence was signed by a magistrate judge on January 15, 2014, and executed on January 21, 2014. (Id.)

   B. Search Warrant

      1. Affidavit Submitted to the Magistrate Judge

      FBI Special Agent David Hedges ("Agent Hedges") submitted an affidavit to the magistrate judge on January 15, 2014, to obtain the search warrant used in the search of Bratcher's residence. (ECF No. 37-2.) Agent Hedges has over twenty-seven years of service with the FBI. (Id. ¶ 3.) Agent Hedges' FBI experience includes narcotics-related arrests, the execution of search warrants resulting in the seizure of narcotics, supervision of informants, and specialized training associated with methods and techniques related to the illegal distribution of narcotics. (Id. ¶¶ 3, 4, 18.) Agent Hedges' affidavit included an itemized list of evidence commonly generated by drug trafficking and firearm offenses. (Id. ¶¶ 9-17.) Agent Hedges concluded in his affidavit that he sufficiently set forth probable cause that Batcher was engaged in drug trafficking, in violation of Title 21 U.S.C. § 846, and that a search of his residence would

result in the recovery of drug trafficking evidence. (Id. ¶ 32.) The affidavit submitted by Agent Hedges contained the following information relating to CS-1.

    a. <u>Statements by CS-1</u>

CS-1 was a newly developed confidential informant. (ECF No. 37-2 ¶ 19.) CS-1 was arrested on narcotics related charges and agreed to work with law enforcement agents to obtain leniency in his or her potential sentencing. (Id.) The affidavit submitted by Agent Hedges provided that CS-1 advised agents that he or she purchased powder cocaine and other illegal narcotics from Bratcher several times a week for approximately two years. (Id. ¶ 24.) CS-1 identified Bratcher as the person he or she bought narcotics from and identified Bratcher's residence as the location where he or she purchased illegal narcotics. (Id. ¶¶ 22-24.) CS-1 stated that Bratcher was known to him or her as "Snuggy" and provided agents of the Greater Pittsburgh Safe Street Task Force with telephone numbers for him. (Id. ¶¶ 3, 20, 26.) The telephone numbers CS-1 provided to agents were found within CS-1's cellular phone contact list. (Id. ¶ 27.) CS-1 stored the phone numbers he or she provided agents under the name "Snug." (Id.)

CS-1 stated that Bratcher's residence was owned by Curtis Brown ("Brown"). (Id. ¶ 26.) CS-1 stated Brown supplied Bratcher illegal narcotics. (Id. ¶ 26.) CS-1 stated that between December 25, 2013 and December 31, 2013, while at Bratcher's residence he or she observed approximately seven firearms, including a Desert Eagle, .50 Caliber pistol, two Glock pistols, an automatic pistol of unknown manufacture, as well as magazines capable of holding thirty rounds of ammunition. (Id. ¶ 25.)

b. <u>Corroborating Evidence Presented by Agent Hedges in his Affidavit</u>

Investigators used a law enforcement data base to obtain photographs of two individuals they believed to be Snuggy. (<u>Id.</u> ¶ 23.) CS-1 identified Bratcher, as Snuggy, in one of the photographs. (<u>Id.</u>) CS-1 identified a photograph of Bratcher's residence as the location where he or she purchased narcotics. (<u>Id.</u> ¶ 22.) In January 2014, FBI agents confirmed one of the phone numbers provided to them by CS-1 when Bratcher placed an unsolicited telephone call to CS-1. (<u>Id.</u> ¶¶ 27-28.)

Agents performed a criminal history check for Bratcher and found multiple misdemeanor firearm and narcotics convictions, as well as numerous arrests for theft-related offenses. (<u>Id.</u> ¶ 29.) Agents confirmed that Brown owned Bratcher's residence after reviewing the Allegheny County Real Estate website. (<u>Id.</u> ¶ 26.) Agent Hedges stated in his affidavit that he was aware that Brown was under indictment for a violation of Title 18 U.S.C. § 922(g)(1). (<u>Id.</u> ¶ 26.) Agent Hedges stated in his affidavit that a further review of Brown's criminal history showed a number of convictions, including 1991 and 1993 felony drug convictions from Allegheny County. (<u>Id.</u>) Other confidential sources indicated to Agent Hedges that Brown was engaged in drug trafficking. (<u>Id.</u>)

III. <u>Standard of Review</u>

A magistrate judge may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). " 'The Supreme Court has recognized that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation, and thus after-the-fact scrutiny by courts of the sufficiency of an affidavit

6

should not take the form of *de novo* review.' " United States v. Rivera, 347 F. App'x 833, 837 (3d Cir. 2009) (quoting Gates, 462 U.S. at 235-36). In making this determination, the court confines itself "to the facts that were before the magistrate judge, i.e. the affidavit, and [does] not consider information from other portions of the record." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).

"A magistrate's 'determination of probable cause should be paid *great deference* by reviewing courts.' " United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). The deferential standard used for reviewing a magistrate judge's decision to authorize the search considers whether the magistrate judge "had a 'substantial basis for … conclude[ing]' that probable cause existed." Conley, 4 F.3d at 1205 (quoting Gates, 462 U.S. at 238); see United States v. Hodge, 246 F.3d 301, 305-10 (3d Cir. 2001) (the court need not determine whether probable cause actually existed, but only whether there was " 'a substantial basis' for finding probable cause") (internal citations omitted). District courts are not to "second-guess a magistrate's determination of sufficient evidence to support a finding of probable cause." Rivera, 347 F. App'x at 837. However, this standard " 'does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.' " Conley, 4 F.3d at 1205 (quoting United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983), *cert. denied sub nom.,* Sanchez v. United States, 466 U.S. 904 (1984). "Nevertheless, the role of the reviewing court is quite limited." Conley, 4 F.3d at 1205. This standard results in most "doubtful or marginal cases in this area" being "determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965)).

## IV. DISCUSSION

### A. Arguments Presented

Bratcher moved to suppress evidence collected from his residence because the affidavit used to obtain the search warrant failed to set forth probable cause. (ECF No. 33 ¶ 5.) Bratcher contends that the affidavit fails because it relies solely on information provided by an untested, and therefore unreliable, confidential informant. (ECF No. ¶¶ 5-15.) Bratcher argues that the lack of information corroborating the confidential informant's statements allows the search warrant to fall within an exception to the good faith reliance doctrine because the warrant leading to his arrest was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001) (quoting United States v. Williams, 3 F.3d 69, 74 n.4 (3d Cir. 1993)). Bratcher argues that based on the lack of probable cause, evidence collected at his residence is "fruit of the poisonous tree" and, therefore, must be suppressed. (ECF No. 33 ¶ 19.) (citing Wong Sun v. United States, 371 U.S. 471, 487-89 (1963)).

The government responded by arguing that the search warrant was properly issued based on probable cause proffered by Agent Hedges in his affidavit. (ECF No. 37.) The government argues that CS-1 provided information relating to Batcher's drug trafficking activity that described with particularity the place to be search and the items to be seized and that the information provided by CS-1 was corroborated through independent law enforcement investigation. (Id. at 8-9.) The government argues that officers executing the warrant relied in good faith upon the warrant because the warrant was "objectively reasonable," i.e. there were sufficient facts to support the magistrate's decision to sign the search warrant. (Id. at 10, 13.) (citing Hodge, 246 F.3d at 309.)

On August 28, 2014, this court decided that Agent Hedges' affidavit supported a finding of probable cause to issue the search warrant. The totality of the circumstances outlined below provided a substantial basis from which to infer that a search of Bratcher's residence would yield evidence of his drug-related activities. The decision to issue the search warrant by the magistrate judge, and the affidavit the magistrate judge relied on to issue the warrant, allowed law enforcement officers executing the search warrant to have an objectively reasonable belief that the search warrant was valid. No exception to the good faith reliance doctrine is applicable in this instance and the evidence recovered from defendant's residence is not subject to the exclusionary rule.

B. <u>Probable Cause</u>

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation ... ." U.S. Const. amend IV. "[T]he probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" <u>Maryland v. Pringle</u>, 540 U.S. 366, 370–71 (2003) (quoting <u>Gates</u>, 462 U.S. at 231). "'[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.'" <u>United States v. Zareck</u>, Crim. No. 09-168, 2010 WL 5053916, at *16 (W.D. Pa. Dec. 3, 2010) (quoting <u>Gates</u>, 462 U.S. at 232). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." <u>Pringle</u>, 540 U.S. at 370–71. "The 'substance of all the definitions of probable cause is a reasonable ground for belief of guilt.'" <u>Pringle</u>, 540 U.S. at 366 (quoting <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1948)). "Probable cause can be, and often is,

inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].' " United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). " 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] … there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " Rivera, 347 F. App'x at 841-42 (citing Gates, 462 U.S. at 238-29.)

In Illinois v. Gates, 462 U.S. 213 (1983), the Court found probable cause based on an anonymous letter submitted to law enforcement agents advising them where large quantities of drugs were stored. The Court decided that agents involved in the case sufficiently corroborated the details provided to them in the letter with independent investigation and based their determination to obtain a search warrant on their knowledge of drug trafficking behavior. Id. at 243–44. While agreeing that it was important to evaluate an informant's veracity, reliability, and basis of knowledge, the Court rejected the rigid application of strict factors and decided that an informant's statements should be reviewed by a judicial officer within the "totality of the circumstances." Id., at 230. The Court instructed that "a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. The Court specifically disagreed with the Illinois Supreme Court's discounting of the corroborative details as "innocent activity," stating that "innocent behavior frequently will provide the basis for a showing of probable cause" and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." Id. at 243 n.13. The Court discussed the value

and impact of corroborating the details of an informant's tip by independent police work and decided that an affidavit relying on hearsay can be the basis of a warrant "so long as a substantial basis for crediting the hearsay is presented." Id, at 241-42. By corroborating the details provided by a confidential informant "the chances of a reckless or prevaricating tale" can be mitigated and the totality of the circumstances may adequately give rise to probable cause. Id. at 244–45.

1. Review of the Affidavit Used to Obtain the Search Warrant for Bratcher's Residence

Bratcher argues that the affidavit submitted by Agent Hedges relied solely on the information provided by an untested confidential informant attempting to obtain leniency in his or her own sentencing. (ECF No. 33 ¶¶ 6, 10, 11.) Bratcher contends that the affidavit did not contain facts that would enable the issuing authority to make an independent determination that seizable evidence will be found in the premise to be searched. (Id. ¶ 12). Bratcher contends that the affidavit failed to corroborate sufficiently the statements by CS-1 because the affidavit failed to specify surveillance of Bratcher, resulting in the discovery of illegal activity, and failed to implicate Bratcher's participation in controlled buys with agents. (ECF No. 33 ¶ 14.)

The Third Circuit Court of Appeals reviewed a similar situation and overturned the district court's decision to discount the reliability of a newly recruited informant in United States v. Stearn, 597 F.3d 540 (3d Cir. 2010). In Stearn, a veteran officer with the Philadelphia Police Department's narcotics unit submitted an affidavit in support of search warrants for multiple locations. Id. at 545. The affidavit was based on a tip from a confidential informant alleging Stearn, and others, conspired to distribute cocaine in Philadelphia. Id. The affidavit submitted by agents in support of the search warrant stated that confidential informant identified: (1) Stearn as the supplier of the narcotics for a drug trafficking conspiracy, (2) the co-

conspirators involved in distributing the drugs, (3) the locations used in the distribution of drugs, and (4) the vehicles driven by members of the conspiracy. Id. at 546.

Officers corroborated the tip through investigation and surveillance which included: (1) a controlled buy, (2) verifying that co-conspirators used the vehicles identified by the confidential informant, (3) surveillance of the members dealing drugs, (4) members of the conspiracy visiting the locations provided to agents by the confidential informant, (5) an investigation of real estate records indicating Stearn owned one of the locations under surveillance, and (6) a review of Stearn's criminal record that included three prior drug distribution arrests. Id. The agent who submitted the affidavit stated that the foregoing facts established probable cause. Id. As a result, warrants were issued and the members of the conspiracy were taken into custody and a federal grand jury charged Stearn with federal narcotics and weapons offenses. Id. at 547-48. Stearn filed a motion to suppress. Id. at 548-49.

The district court granted Stearn's motion to suppress finding that the affidavit did not contain evidence regarding the reliability of the confidential informant. Id. at 549. The district court stated "the affidavit provides no assertion the officers believed the confidential informant, no history of past cooperation by the informant, no drug buys by the informant, and no inside information supplied by the informant." United States v. Stearn, 548 F. Supp. 2d 182, 190 (E.D. Pa. 2008). The district court decided that because the affidavit failed to establish meaningful corroboration of drug activity to the location associated with Stearn the informant's tip did not support probable cause. Id. at 192-93. The government appealed the district court's decision.

On appeal, the Court of Appeals for the Third Circuit reversed the district court's decision stating that "[a] magistrate may issue a warrant relying primarily or in part upon the

statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." Stearn, 597 F.3d at 555. The court of appeals took guidance from Gates "which instructs that '[if] an informant is right about some things, he is more probably right about other facts.' " Id. at 557 (citing Gates, 462 U.S. at 244.)

In the instant action, CS-1 provided law enforcement agents with specific information concerning Bratcher's role in drug trafficking and firearm possession. (ECF No. 37-2 ¶¶ 19-28.) The information provided by CS-1 includes:

> (1) identifying Bratcher to agents and indicating that he was known to him or her as Snuggy,
>
> (2) identifying Bratcher's residence as the location where he or she purchased drugs for over a two year period,
>
> (3) providing agents with telephone numbers for Snuggy,
>
> (4) stating that he or she observed approximately seven firearms while at Brathcer's residence, and
>
> (4) identifying Brown as Bratcher's supplier of illegal narcotics and owner of Bratcher's residence.

(Id. ¶¶ 19-28.) Independent law enforcement investigation uncovered that, consistent with CS-1's allegations, real estate records indicated that Brown owned Bratcher's residence and that both Brown and Bratcher had past drug-related criminal histories. (Id. ¶¶ 26, 29.) Agent Hedges stated in his affidavit that he was aware that Brown was under indictment for a violation of Title 18 U.S.C. § 922(g)(1), and that a further review of Brown's criminal history showed a number of convictions, including 1991 and 1993 felony drug convictions in Allegheny County. (Id. ¶ 26.) A criminal history check of Bratcher's record returned multiple misdemeanor firearm and

narcotics convictions. (Id. ¶ 29.) see Conley, 4 F.3d at 1207 (previous arrests and convictions may help to establish probable cause). Law enforcement agents were aware that Batcher made an unsolicited telephone call to CS-1 from one of the phone numbers CS-1 provided to agents. (Id. ¶ 28.) Finally, other confidential informants indicated to agents that Brown was involved in drug trafficking. (Id. ¶ 26.)

These facts combine to suggest that Bratcher was an experienced and repeat drug trafficker who would need to store evidence of his illicit activities somewhere. It is reasonable to infer that a person involved in drug dealing on such a scale would store evidence at his home. United States v. Whitner, 219 F.3d 289, 297-98 (3d Cir. 2000) (citing decisions from other circuits); United States v. Feliz, 182 F.3d 82, 86–88 (1st Cir. 1999) (finding "sufficient showing of probable cause" for search of "long-time, successful, drug trafficker['s]" apartment, despite lack of direct evidence linking apartment to trafficking); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) (noting " ' that in the case of drug dealers evidence is likely to be found where the dealers live' ") (citing United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir. 1996). The Court of Appeals for the Third Circuit stated that "[t]he rationale underlying the foregoing line of cases is that evidence associated with drug dealing needs to be stored somewhere, and that a dealer will have the opportunity to conceal it in his home." Whitner, 219 F.3d at 298. A drug dealer "logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold." Id. Not to be overlooked is Brown's and Bratcher's co-involvement, including the fact that Brown owned Bratcher's residence. Taking into account their respective criminal histories, and analyzing this evidence within the

framework provided by the CS-1 and the police investigation, the real-estate connection makes it more probable than not that Bratcher's residence was a nexus of drug trafficking activity. A common-sense review of this connection provided the magistrate judge a substantial basis to believe drug trafficking is taking place at Bratcher's residence and that his residence may contain evidence of those acts.

Finally, Agent Hedges, an experienced FBI agent, recommended that a search of defendant's residence would likely result in the recovery of evidence of drug trafficking and firearm offenses. (ECF No. 37-2 ¶ 3, 4, 32.) Agent Hedges drew upon his experience and training to support his contention and a magistrate judge may " 'give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.' " United States v. McLaughlin, 571 F. App'x 147, 149 (3d Cir. 2014) (citing Whitner, 219 F.3d at 296).

The cumulative evidence outlined above provided a substantial basis from which the magistrate judge properly inferred that a search of defendant's home would yield evidence of Bratcher's drug-related activities. Bratcher's motion to suppress fails to characterize the hallmarks of affidavits that failed to sufficiently set forth probable cause. See United States v. Martinez, 982 F.Supp.2d 421, 432-33 (E.D. Pa. 2013) (the detective admitted that she had done nothing to corroborate an anonymous tip from an anonymous informant). The Court's preference for supporting a magistrate judge's decision to issue a warrant further persuades this court to hold that the magistrate judge had a substantial basis for finding probable cause in this instance. See Hodge, 246 F.3d at 305-10 ("[A] 'grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for

searches conducted pursuant to a warrant.") (quoting Ventresca, 380 U.S. at 108). Bratcher's motion to suppress physical evidence recovered from his residence is denied.

C. Good Faith Exception

The good faith exception instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Williams, 3 F.3d 69, 74 (1993). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting United States v. Leon, 468 U.S. 897, 922 n.23 (1984)). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. Leon, 468 U.S. at 922; Williams, 3 F.3d at 74. Yet there are situations in which an officer's reliance on a warrant would not be reasonable and would trigger the exception. The Third Circuit Court of Appeals has identified four such situations:

(1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;

(3) [when] the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

(4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Hodge, 246 F.3d at 308 (citing Williams, 3 F.3d at 74 n.4).

Bratcher contends that the third situation is applicable here. Bratcher argues that the lack of corroborating evidence in the affidavit should have alerted the agents executing the search warrant of its unreasonableness. (ECF No. 33 ¶ 5.)

The Court has emphasized that the good faith exception requires objectively, not subjectively, reasonable conduct. Leon, 468 U.S. at 919–20 & n. 20. "When judgment calls of this kind are required," officers should be able to rely on the magistrate judge's determination of the law. Williams, 3 F.3d at 74. Bratcher did not present any evidence or argument to indicate that the officers should have known that the search warrant was deficient. As a result, even if the search warrant was deficient, it was not lacking in indicia of probable cause and the good faith exception is applicable in this instance.

V. CONCLUSION

For the forgoing reasons, Bratcher's motion to suppress must be denied. Batcher failed to overcome the deferential standard applicable to a magistrate judge's decision to issue a search warrant. The affidavit submitted by Agent Hedges contained sufficient evidence corroborating CS-1's statements to indicate probable cause. Even assuming for the purpose of argument that the magistrate judge did not have a substantial basis for finding probable cause, the good faith exception to officers executing a search warrant is applicable because there was sufficient indicia of probable cause in the affidavit.

Dated:   October 9, 2014            /s/ Joy Flowers Conti
                                    Joy Flowers Conti
                                    Chief United States District Judge